Before I begin, I'll just note in advance that I would like to reserve a few moments for... All right, watch your time, counsel, because the 10 minutes is the entire time you have. May it please the court. Good morning, my name is James Kidder and I represent the appellant, Mr. Kuchurian, his wife and his child, who appealed the decisions by the Board of Immigration Appeal and the immigration judge to deny withholding of removal and relief under the fled Armenia in the year 2000, shortly after Mr. Kuchurian endured repeated kidnappings, imprisonments, and tortures at the hands of Armenian security forces for his participation in political opposition activities. Similar types of abuses are well human rights report regarding Armenia. In fact, the conclusion of that particular report was that the Armenian government's human rights was poor. As a result of these abuses, as well as continued threats against Mr. Kuchurian's safety, Mr. Kuchurian fears that if he's returned to Armenia, he will face similar atrocities or worse. In the immigration context, the Ninth Circuit has a unique standard of review that is not simply deferential to the lower courts. This court must review the Board of Immigration Appeals and the immigration judge's rulings under a substantial evidence standard. The findings here in this case simply cannot meet that standard. Well, let me ask you something I'm concerned about. Was it his testimony relating to his membership in Yerkobah and his activities lacking in detail? That is one issue that the immigration judge did raise. However, I contend that the credibility ruling that the judge made based upon that particular issue was an error, in large part because it was based upon speculation and conjecture, which, under the Ninth Circuit case law, is inappropriate. In fact, Mr. Kuchurian did testify in detail regarding his membership and the activities of the Yerkobah, and those items are set forth in the testimony before the court. To the extent that there is an inconsistency in this case, however, the inconsistency really lies in the opinion of the immigration judge. On the one hand, the judge found Mr. Kuchurian generally credible. Yet, on the other hand, he found certain portions of his testimony implausible. Quite honestly, there's just no way to reconcile this particular issue. Do you claim a language barrier as well? There was a language barrier, yes. And, in fact, not only a language barrier, but just a general understanding. For example, one of the items that the immigration judge and the Board of Immigration Appeal points to is Mr. Kuchurian's kidnapping and whether there was an arrest warrant or not. Quite frankly, if anyone beyond the legal community or perhaps law enforcement, even here in the United States, probably doesn't even understand exactly what it is, it's not surprising that Mr. Kuchurian also may have wavered concerning whether an arrest warrant in Armenia existed. Counsel, how about the fact that the petitioner did not know the titles and names of some of the most prominent officers of the parties? Yes, that is another point that the immigration judge did raise. Although, that particular issue is really a minor point that doesn't go to the heart of the question. Why not? If you claim to be actively involved in a party that leads to your persecution, and you claim that your activities in that party are critical to your claim of asylum, and you can't, and you don't know the names of the top members of the party or their titles, isn't that something central to your claim that you would know if you were, in fact, intimately involved in that party? First of all, I think as described in the testimony before the immigration judge and in the documents, the organization is quite fluid. And as well, I think the heart of petitioner's claims are the fact that he was kidnapped and thrown into the back of a car. He was detained, interrogated, and tortured by Armenian because of his political opposition activities. But the mere fact that he may not know the exact titles of the particular individuals. He knew and recounted the names of the leaders, but the titles themselves, he, for purposes of oral argument here, he may have not known in that particular instance. But couldn't the immigration judge rely on that? I mean, are we compelled to say that the immigration judge had to credit the testimony with those discrepancies? The, the, according to case law here in the Ninth Circuit, including the Wang case and the Goh case, again, this is a really a minor inconsistency and that doesn't go to the heart of. Hey, if we disagree with you that this is a minor inconsistency, if we think that this is not a immigration judge's decision. I don't believe so. Why not? If it's major, why isn't that enough? That's because Mr. Kachurian, there is testimony and documentary evidence in the record to demonstrate that he was a member of the organization and participated in political talking with other potential members to support his cause. And for those activities, he was again, kidnapped on two different occasions by Armenian government security officials, detained, threatened because of those particular activities, told not to engage in those after he left Armenia and came back and came here to the United States, those same security officials went to his neighborhood and asked neighbors, you know, about his whereabouts. Counselor, you're down to a minute and 59 seconds. You want to save some time for rebuttal? Yes, Your Honor. All right. Thank you. Okay. Please, the court, once again, Larry Cody on behalf of the respondent, Alberto Gonzalez. Again, Your Honors, we're coming to the issue of whether or not this claim was properly exhausted before the board. And again, the government would say that petitioner in this matter did not exhaust the adverse credibility issue before the board, nor did he exhaust the cat claim before the board. It's clear from the notice of appeal, not so clear perhaps from his brief, but certainly clear from the board's decision that petitioner did not present any or address the issues regarding adverse credibility and cat before the board. The board specifically says in its decision that respondent has not specifically addressed the basis for the immigration judge's adverse credibility finding. Counsel, in our case, Thomas versus Gonzalez, didn't we say that the BIA is on notice of an issue if the petitioner raises it in his notice of appeal or in his briefs before the BIA? Your Honor, the facts of Thomas are a little different than what we have here. But would you just, was that our holding though? I believe so, Your Honor, but I believe the court's holding in Thomas should be restricted to the facts of Thomas and cases like Thomas. In Thomas, you had an instance where an alien had made the claim that they put the immigration judge and the board on notice that they were seeking asylum based on a particular issue, based on whether or not they were a particular social group. When that case got up to the Ninth Circuit, the Ninth Circuit did its analysis and agreed that yes, the alien checked off the proper box. The alien in their facts to put the board on notice and the immigration judge on notice that they were seeking asylum based on a particular basis. Assuming it is before us, it appears to be some of the credibility determinations of the IJ were really nitpicking. He said there was an arrest warrant, but then later he said, well, according to the IJ, he backed down. He was just on a list. But, you know, he's on a list to be arrested. What's the difference? Your Honor, what's important about that consistency is it's more than just him saying there was an arrest warrant. It's him saying that there were charges, criminal charges brought against him. He says to the immigration judge that What does he say, criminal charges? I believe in his affidavit to his asylum application, Your Honor. Yeah, but that's not what the IJ relied upon for an adverse determination. He said he said arrest warrant on one instance, and then he later said, well, he doesn't know whether it's a real arrest warrant or he's on a list to be arrested. And I believe the immigration judge may have cited, if the immigration judge didn't, the board definitely did. But I believe both bodies cited also back to his affidavit that he filed in support of his asylum application, where he specifically lists the three charges that were brought against him. Well, I'll have to check that. But then again, on the beatings, the IJ said it was implausible that after getting beaten, he could have walked out of the hospital. You know, I mean, the IJ is not a doctor. I don't see why someone that gets roughed up would necessarily have to be hospitalized, depending upon where they beat you and how badly they beat you. And the IJ concluded that he was implausible because he said he returned within a few days. Your Honor, the implausibility determination with respect to that particular issue came about from Petitioner's testimony, where he says that he received severe internal injuries. And then when pressed by the immigration judge on that issue as to whether or not he sought medical attention, he sort of comes back from that severe internal injury statement and then says, well, I saw somebody who gave me something akin to an herbal remedy, and then I went home. I went back to work and went back. Well, he didn't have any medical records. The IJ found fault with the fact that he didn't documents. But I don't know if someone can have documents or would necessarily have documents under those circumstances. And again, Your Honor, post-Real ID Act here, arguably whether or not the immigration judge, the availability of those corroborating documents, if that issue is before the court, this court would again review that for substantial evidence. And the government's position is that the record doesn't compel Petitioner's conclusion that he couldn't get the documents, that medical documents weren't available to him. And the adverse credibility determination, it's very detailed. It's more than just an implausibility here. It's the whole tenor of the testimony. It's very thin testimony. It's very exaggerated testimony. And the immigration judge warned him, I think at least on one occasion and perhaps two, that, you know, hey, Petitioner, you need to be up front and be very specific and not make these outlandish claims like, oh, they know that I'm in this court right now before you judge, too. I mean, it was things like that that came out in his testimony that really... Well, he also found fault because he couldn't ascribe to what happened to the other people that were roughed up and kidnapped. But, you know, how is he supposed to know what happened to others? He's not a gathering authority for people that are beaten up. No, Your Honor, but the way he described the testimony, the way he testified was that there were people he knew, people he was friends with, that people he was arrested with. You certainly would think that if I'm arrested with somebody, I'm going to know what's going to happen to them, at least that, hey, my buddy Bob was pulled out and came back later with bruises or he was just pulled away. I never saw him again. And he doesn't even offer any testimony like that. He's very, very non-responsive to the immigration judge. I got the feeling just from the record that the man was somewhat uncomfortable with the language as well. That could be the case. That issue, again, was not presented that there was any sort of interpreter issue that, you know, that he had difficulty understanding the immigration judge or the immigration judge's questions. Counsel, I'm looking at the declaration that was submitted by the petitioner, and he says that he was charged in the following. He doesn't say it's on page 181 and 182 of the administrative record. He doesn't make a distinction between, you know, formal criminal charges with a warrant or whatever. He just says he's charged. Right. They charged me in the following. He doesn't say anything about a warrant or anything like that. So how can that be? Well, that's what the government was saying earlier, Your Honor, is that it wasn't more than just arrest warrants. I think the immigration judge used the term when he asked about arrest warrants, but I think it was petitioner's testimony that he was charged with crimes, and he kind of backed off and said, well, if I was charged with crimes, it's with this certain organization. But you made the point that it was inconsistent with his declaration. That's not inconsistent with his declaration, because in his declaration, he didn't specify whether there was an arrest warrant or official criminal charges brought against him. He just says he was charged. You can be charged just by being accused, and someone who's not versed in the law could use that term loosely as opposed to how lawyers use it. And, Your Honor, I apologize. I don't have that part of the record in front of me right now. But my recollection was that he makes an allegation, either in that declaration or in his testimony, that he was charged with or told of these three crimes against him, and then he was brought back in front of this minister who read these charges to him again. So I believe there is, in the record, some reference to, or at least implicitly, that there was a document that somebody was reading from of those charges. Again, Your Honor, the government's position is that the record evidence before the court here is that the conclusion that Petitioner was credible is not compelled by the evidence before. And if this Court were to find that Petitioner exhausted his remedies, and if the Court were to find that substantial evidence does not support the immigration judge's adverse credibility determination, then the government believes that a remand would be appropriate for the agency to, in the first instance, address the merits of the case. Now, can you – I don't quite pick up on the absolute finding of a lack of credibility. It's kind of iffy, is it not? Your Honor, there is arguably a typo, I believe, in the immigration judge's decision. If you look on page – in the administrative record on page 53, the immigration judge – and Petitioner's counsel relies on this in his brief and his reply brief – the immigration judge says that Petitioner's credible. And I – the government believes that that was a typo on the part of the immigration judge, because certainly the several pages after that, it's – he goes through the analysis of what is required for an adverse credibility determination, and he does all the things he doesn't believe. And then on page 62 of the administrative record, he does say that he finds Petitioner not credible. No, not quite. He says, therefore, for all of the reasons stated, I do not find that the Respondent has made a credible witness, and I do not find that some of his explanations are plausible. Now, that's a shortcoming. Yes, express. That he doesn't find him credible. Your Honor, perhaps – He hasn't made a credible witness, and then he says, therefore, I find that he has failed in his burden to show by a clear probability and so on. Now, that's just one step short, is it not? It would be helpful if we knew that this – I.J. said, this man is not credible, as opposed to saying, well, I don't know. Your Honor, I believe you're correct. The immigration judge did not use the magic words, I find, I make an average credibility determination. But I think – and I see my time is ending – I think in the context, if you read the entire decision, in the context of the decision, it's clear from the immigration judge's decision and the board's affirmance of that decision that an average credibility determination was made. But there is a niche in here in which there's a difference between finding somebody incredible and rejecting everything they say, and then saying, well, I'm frustrated in what to know here, and therefore, I find that he didn't prove it. And there's a difference between failure of proof and a finding of no credibility. And our response has to be different to those two, does it not? In one instance, we have to conclude that a trier fact would be compelled to find to  Correct, Your Honor. So it clutters up our response. Again, I think the government's position is that it's clear from both decisions that an average credibility determination was made. Okay. All right. Thank you, counsel. Rebuttal. May it please the Court. I just want to address one issue, the jurisdiction issue that counsel had raised. Your Honor, I think as you correctly point out, the Thomas case, and I'll quote it here, this states that the purpose of exhaustion is to give an administrative agency the opportunity to resolve a controversy or correct its own errors before judicial intervention. The issues were raised in the appellant's brief before the BIA, and the BIA spent nearly half of its opinion dealing with both the CAT and the credibility issues. If there are no further questions, I'll go ahead and submit. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: Cowan , Leavy, Rawlinson